UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: JOSEPH ERIC VALDEZ, No. 7-04-15876 ML

    Debtor.

_____

SOUTHWEST FINANCIAL OF
ALAMOGORDO, INC.,

    Plaintiff,

v.     Adversary No. 05-1043 M

JOSEPH ERIC VALDEZ,

    Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court tried this adversary proceeding to determine the dischargeablity of a particular debt under 11 U.S.C. § 523(a)(2)(A) and (B) on the merits in Las Cruces, New Mexico and took the matter under advisement. Plaintiff, Southwest Financial of Alamogordo, Inc. ("SWFA"), contends that Defendant, Joseph Eric Valdez, obtained a loan from Plaintiff through false pretenses, a false representation or actual fraud, rendering the debt attributable to the loan non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Plaintiff also asserts that the debt arising from the loan is non-dischargeable under 11 U.S.C. § 523(a)(2)(B) based on false information contained in a loan information sheet used by the Plaintiff in connection with the granting of the loan. Defendant asserts no fraud has been committed, and that Plaintiff has failed to prove by a preponderance of the evidence all of the required elements for non-dischargeability under either section. Based on the evidence and testimony offered at trial, the Court finds that Plaintiff has not sustained its burden under 11 U.S.C. § 523(a)(2)(A) or (B). Consequently the debt at issue

1

in this adversary proceeding is dischargeable. Accordingly, the Court enters the following findings of fact and conclusions of law in accordance with Rule 7052, Fed.R.Bankr.P.

FINDINGS OF FACT

1. Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 12, 2004.

2. In the summer of 2002, Defendant's financial condition was not very good. He had unpaid medical bills arising from the hospitalization of his baby daughter. The Defendant's vehicle had broken down and he was trying to fix it. Other household bills such as the phone bill, the gas bill, and the water bill were past due. Defendant's wife had to stop working to take care of their child, so that even though she returned to work as a teacher in August or September of 2002, the income the Defendant and his wife were expecting from her employment as a teacher was not as high as they had anticipated.

3. Defendant's father, Joe D. Valdez, was president of Southwest Financial of Las Cruces, Inc. ("SWFLC"), which is a sister company of SWFA.

4. Defendant approached his father to ask whether he could help out financially. His father indicated that he could not lend Defendant any money himself, but referred Defendant to SWFA.

5. Defendant wanted to obtain a loan so that he could purchase two all-terrain vehicles ("ATVs") from Charles Gray, a friend of Defendant's father.

6. George H. Elizondo, manager, officer, and director of SWFA, knew Defendant's father very well through work at SWFA and SWFLC. Mr. Elizondo trusted Defendant's father.

7. Defendant and his father went to SWFA to obtain the loan.

8. A loan information sheet was prepared in connection with the loan. Defendant did not prepare or sign the loan information sheet.

9. The loan information sheet contained the following false information: Defendant's social security number was incorrect by one digit; Defendant had only resided at the address listed in the loan information sheet for a period of about a year, though the loan information sheet reflected three years; the Defendant's place of employment reported on the loan information sheet was not correct. At the time the loan was granted, Defendant did not work at the healthcare facility listed on the loan information sheet, although he had previously applied to work there and had worked there for a very short period of time. At the time of the loan, Defendant held a similar job for comparable pay at a different healthcare facility called Village at Northrace. 10. Defendant sat in a chair while his father and Mr. Elizondo met separately. Defendant did not meet with any personnel at SWFA. When Defendant's father and Mr. Elizondo returned, Defendant signed the note. Defendant did not identify himself as the son of Joe Valdez, nor did anyone at SWFA ask whether Defendant was related to Joe Valdez.

11. Defendant did not inform anyone at SWFA that he was having financial difficulties.

12. Defendant left SWFA with two checks: one in the amount of $6,500.00 payable to Chas B. Gray, and one in the amount of $500.00 payable to Defendant  The total transaction took about twenty minutes to complete.

13. Mr. Elizondo testified that it is not unusual for SWFA to process and grant a loan in such a short time, but that generally when people come in to SWFA to apply for a loan, he tells them to check back in about an hour. SWFA is a small operation, whose personnel consists of Mr. Elizondo, one full-time assistant, and one part-time assistant.

14. Mr. Elizondo testified that the primary factors SWFA considers when determining whether to make a loan are creditworthiness and character of the borrower.

15. Mr. Elizondo reviewed and approved the loan to Defendant. To check the information on the loan information sheet, Mr. Elizondo verified it with Defendant's father, who said that Defendant was a good person who is very responsible. Mr. Elizondo testified that he called to verify Defendant's employment and income, and that he made a notation on the loan information sheet of what he considered a small discrepancy in the income reported. Mr. Elizondo testified that the person who answered his call to verify Defendant's employment identified the business as a name different than the name listed on the loan information sheet. Mr. Elizondo did not seek further clarification of Defendant's current place of employment from Defendant.

16. Mr. Elizondo also ran a credit report. The credit report that Mr. Elizondo ran using the incorrect social security number from the loan information sheet came back "no record found." Mr. Elizondo testified that when a credit report reflects "no record found" it means the person has never applied for any credit. At the time, he thought it was strange that the credit report he ran on Defendant reflected "no record found" so he ran a second report, but obtained the same results. Mr. Elizondo did not follow up with Defendant regarding the credit report.

17. Mr. Elizondo testified that he granted the loan based primarily on his relationship with Defendant's father. Because the loan was referred by Defendant's father, Mr. Elizondo expected that it would be a good loan. Had Mr. Elizondo known about Defendant's additional debts, he would have factored that into his decision and might not have approved the loan.

18. After receiving the loan, Defendant told his father to deliver the $6,500.00 check to

4

Mr. Gray so that Defendant could purchase the ATVs.

19. A few days later, Defendant determined that he really could not afford to purchase the ATVs due to his financial situation, so he called his father and Mr. Gray and asked that the money be returned. Mr. Gray kept $500.00 of the $6,500.00 and returned $6,000.00 in cash to Defendant.

20. Defendant spent the $6,000.00 on various past due bills, including rent, telephone bills, and medical bills.

21. Defendant testified that he could not recall where he cashed the $500.00 check made payable to Defendant, but that he spent the money on miscellaneous items.[1]

22. Defendant made several payments on the note. To make a payment, he would give his father cash and asked his father to make the payment. Defendant never made any of the payments directly to SWFA.

## CONCLUSIONS OF LAW

"Exceptions to discharge are construed narrowly, and the burden of proving that a debt falls within a statutory exception is on the party opposing discharge." *Driggs v. Black (In re Black),* 787 F.2d 503, 505 (10th Cir. 1986)(citations omitted). The requisite standard of proof for exceptions to discharge is the preponderance of the evidence standard. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

Sections 523(a)(2)(A) and (B) except from discharge any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing

---

[1] Mr. Gene Lee testified that the $500.00 check made payable to Defendant was deposited at SWFLC; however the back side of the check showing the endorsement and deposit information was not entered into evidence.

>                of credit to the extent obtained by --
>                     (A) false pretenses, a false representation, or actual fraud, other
>                          than a statement respecting the debtor's or an insider's
>                          financial condition;
>                     (B) use of a statement in writing --
>                          (I) that is materially false;
>                          (ii) respecting the debtor's or an insider's financial
>                               condition;
>                          (iii) on which the creditor to whom the debtor is liable for
>                               such money reasonably relied; and
>                          (iv) that the debtor caused to be made or published with
>                               intent to deceive.
>
> 11 U.S.C. § 523(a)(2)(A) and (B).

To prevail on a cause of action under 11 U.S.C. § 11 U.S.C. § 523(a)(2)(A), Plaintiff must prove by a preponderance of evidence the presence of the following elements: "[t]he debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was [justifiable][2]; and the debtor's representation caused the creditor to sustain a loss. *Fowler Bros v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996).

"False representations are 'representations knowingly and fraudulently made that give rise to the debt.'" *In re Sutherland-Minor,* 345 B.R. 348, 354 (Bankr.D.Colo. 2006) (quoting *Cobb v. Lewis (In re Lewis),* 271 B.R. 877, 885 (10th Cir. BAP 2002)). There is no evidence that Defendant made any representations to SWFA. Defendant went to SWFA with his father and waited while Mr. Elizondo and Defendant's father met separately. Any questions Mr. Elizondo had regarding Defendant's character and creditworthiness were addressed to Defendant's father. The Court, therefore, cannot find based on the evidence presented at trial,

---

[2]*Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d. 351 (1995) changed the standard of reliance under 11 U.S.C. § 523(a)(2)(A) from "reasonable" to "justifiable."

6

that Defendant knowingly and fraudulently made a representation to SWFA that gave rise to the debt.

False pretenses, as distinguished from false representations, "involve[ ] an implied misrepresentation that is meant to create and foster a false impression." *In re Bruce,* 262 B.R. 632, 636 (Bankr.W.D.Pa. 2001) (citing *In re Scarlata,* 127 B.R. 1004, 1009 (N.D.Ill. 1991)). Plaintiff seems to suggest that Defendant's mere presence at SWFA, knowing that his father would use his influence and relationship with Mr. Elizondo to secure the loan, constitutes an implied misrepresentation that created a false impression that Defendant could afford to repay the loan, when, in fact, he could not. The Court finds that Defendant's mere presence at SWFA to obtain the loan does not constitute a false representation, nor does it evidence an intent to defraud. Although Defendant testified that after obtaining the loan, he determined he could not afford to purchase the ATVs, he maintained that he could afford to repay the loan. At the time the loan was granted in the summer of 2002, Defendant was anticipating additional income from his wife's employment that did not, in fact occur. Unless a creditor can show that a debtor obtained a loan while never intending to repay it, an implied representation regarding an intent to repay is not fraudulent within the meaning of 11 U.S.C. § 523(a)(2)(A). *See Chevy Chase Bank FSB v. Kukuk (In re Kukuk),* 225 B.R. 778, 786 (10th Cir. BAP 1998) (in evaluating dischargeability of credit card debt, the appellate panel found that the creditor must demonstrate that at the time the debt was incurred, the debtor had no present intention to repay the debt). Moreover, a statement regarding *ability to pay,* as opposed to *intent to repay,* "is not grounds for non-dischargeability under 11 U.S.C. § 523(a)(2)(A)" because that section expressly exempts "'statement[s] respecting the debtor's or an insider's financial condition[.]'" *Kukuk,* 225 B.R. at

7

785 (quoting 11 U.S.C. § 523(a)(2)(A)). However, ability to pay is relevant to the determination of whether the debtor never intended to repay the debt. *Id.* at 787 (finding that the debtor's financial condition at the time the debt was incurred is relevant to the determination of fraudulent intent under the totality of the circumstances test).

Even if Defendant's mere presence at SWFA could be construed as an implied misrepresentation of Defendant's intent to repay the loan, Plaintiff has failed to establish that it justifiably relied on Defendant's implied misrepresentation in extending the loan. To the contrary, Plaintiff relied on the representations of Defendant's father. Plaintiff has, therefore, failed to sustain its burden of proof on its claim under 11 U.S.C. § 523(a)(2)(A).[3]

Section 523(a)(2)(B) enumerates the elements necessary to a determination of non-dischargeablity based on a writing that contains false statements regarding the debtor's financial condition. The requirement under 11 U.S.C. § 523(a)(2)(B) that a statement regarding the debtor's financial statement be "in writing" is a separate, threshold, element. *See Bellco First Federal Credit Union v. Kaspar (In re Kaspar),* 200 B.R. 399, 402-03 (D.Colo. 1996), *aff'd,* 125 F.3d 1358 (10th Cir. 1997) (noting that the "'in writing' requirement is a separate and distinct element of a section 523(a)(2)(B) claim . . . . [t]hat is . . . a threshold requirement that must be satisfied before the four subsequent requirements of 523(a)(2)(B) are analyzed.") (citing *In re Stafos,* 666 F.2d 1343, 1346 (10th Cir. 1981) (remaining citation omitted)). In addition, unlike 11 U.S.C. § 523(a)(2)(A) which requires only justifiable reliance, 11 U.S.C. § 523(a)(2)(B) requires the higher standard of reasonable reliance. 11 U.S.C. § 523(a)(2)(B)(iii). *See In re*

---

[3]Because Plaintiff has failed to demonstrate justifiable reliance on a representation made by Defendant, the Court need not consider whether other elements under 11 U.S.C. § 523(a)(2)(A) have been satisfied.

8

*Merrick,* 347 B.R. 182, 189 (Bankr.M.D.La. 2006) (noting that "[r]easonable reliance is a more exacting standard than justifiable reliance, and focuses on whether the creditor's reliance would have been reasonable to a hypothetical average person.") (citations omitted); *Nissan Motor Acceptance Corp. v. Ferrell (In re Ferrell),* 213 B.R. 680, 687 (Bankr.N.D.Ohio 1996) (discussing *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) which determined that the standard under § 523(a)(2)(A) "is the less rigorous justifiable reliance test rather than the reasonable reliance test under § 523(a)(2)(B)").

In this case, Defendant signed no documents other than the note itself. He did not sign the loan information sheet, nor did he prepare it. Thus, while it is not strictly required that a debtor actually sign a written document regarding the debtor's financial information in order to satisfy the "in writing" requirement of 11 U.S.C. § 523(a)(2)(B)[4], the Court cannot find, based on the evidence before the Court that Defendant made any written representation to the Plaintiff regarding his financial condition. Plaintiff has failed to meet this threshold requirement. Even if the Court were to construe the loan information sheet as a written document published by the Defendant concerning the Defendant's financial condition, since the Defendant, by implication,

---

[4]*See, e.g., Hudson Valley Water Resources v. Boice (In re Boice),* 149 B.R. 40, 45 (Bankr.S.D.N.Y. 1992) ("Plaintiff need not prove that the writing constituting the false statement was entirely completed by Debtors. It is sufficient that Debtors either wrote, signed, or adopted such statement to find that the documents were "written" by them.") (citing *Chevy Chase Fed. Sav. Bank v. Graham (In re Graham)*, 122 B.R. 447, 451 (Bankr.M.D.Fla.1990)); *Household Fin. Corp. v. Howard (In re Howard),* 73 B.R. 694, 702 (Bankr.N.D.Ind. 1987) (noting that to satisfy the writing requirement under § 523(a)(2)(B) "the statement must be in writing, must have been written by the Debtor, signed by the Debtor, or the particular writing must have been adopted or used by the Debtor.") (citations omitted). *See also,* 4 Collier on Bankruptcy ¶ 523.08[2][a] (Henry J. Sommer and Alan N. Resnick, eds. 15th ed. rev. 2006) (noting that "the statement, to be 'in writing' must have been either written by the debtor, signed by the debtor, or written by someone else, but adopted and used by the debtor.").

9

adopted the loan information sheet inasmuch as he accepted the loan which was granted based, in part, on information contained therein, Plaintiff failed to show reasonable reliance.

The false information contained in the loan information sheet consists of the following: 1) an incorrect social security number; 2) incorrect length of time living at current residence; and 2) incorrect employer.  Mr. Elizondo stated that his decision to grant the loan was based primarily on the fact that Joe Valdez recommended the Defendant and vouched for Defendant's character and responsibility.   The fact that the credit report run on the incorrect social security number reflected "no report found" did not deter Mr. Elizondo from making the loan.  Other questions concerning information on the loan information sheet were directed to Defendant's father, Joe Valdez, not the Defendant.  Thus, the Court cannot find that Plaintiff relied on any false information contained in the loan information sheet in extending the loan.

At trial, Gene Lee, who is employed by Southwest Financial Management (an entity that does accounting work for SWFA and SWFLC)  in Baton Rouge Louisiana, and who is also an officer of SWFA and SWFLC, testified about a scheme that Joe Valdez used to obtain money from SWFLC, implying that the loan to Defendant at issue in this adversary proceeding was part of the same scheme of obtaining funds from SWFA and/or SWFLC by using "nominal borrowers."   While Mr. Lee testified about the actions of Defendant's father, he offered no testimony regarding Defendant's participation in his father's scheme. Rather, the Court is left to infer from Mr. Lee's testimony regarding Defendant's father that the transaction at issue in this proceeding was part of the overall scheme perpetuated by Defendant's father, and that Defendant's presence at the transaction and receipt of the funds from the loan implicate Defendant.   It does not appear that Mr. Lee's testimony would be sufficient to support an

10

inference that Defendant's role in the transaction at issue renders the debt non-dischargeable under either 11 U.S.C. § 523(a)(2)(A) or (B). However, because these issues were not properly raised in the Pre-trial Order, Plaintiff is precluded from raising them at trial.

Neither the Complaint nor the Pre-trial Order contain any allegation of a conspiracy or scheme between Defendant and Joe Valdez to wrongfully obtain money from SWFA and/or SWFLC. Nor does the Pre-Trial Order recite any of the factual allegations that Mr. Lee testified to at trial in an attempt to impute liability to Defendant based on his relationship with his father. The Pre-Trial Order controls the course of the litigation. Rule 16(e), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7016, Fed.R.Bankr.P. (The pre-trial order "shall control the subsequent course of the action unless modified by a subsequent order."). *See also, Youren v. Tintic School Dist.,* 343 F.3d 1296, 1304 (10th Cir. 2003) (a pre-trial order "supercedes the pleadings and controls the subsequent course of litigation."). Because the purpose of a pre-trial order "'is to clarify the real nature of the dispute at issue, attorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issues of the trial will be.'" *Id.* (quoting *Rios v. Bigler,* 67 F.3d 1543, 1549 (10th Cir. 1995)). A pre-trial order may be modified "only to prevent manifest injustice." Rule 16(e), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7016, Fed.R.Bankr.P. Because Defendant was not put on notice by the Pre-Trial Order of the nature of Mr. Lee's testimony, Defendant would be unfairly prejudiced if Plaintiff were allowed to raise these issues at trial. The Pre-Trial Order did not contain any contested issues of fact regarding Defendant's assistance or participation in any improper actions that may have been taken by Defendant's father and failed to specify the subject of Mr. Lee's testimony; therefore, such matters were not properly raised at trial to

11

support of Plaintiff's causes of action under 11 U.S.C. § 523(a)(2)(A) and/or (B).

Plaintiff asserts that the testimony of Gene Lee is not offered for the purpose of showing the existence of a scheme or conspiracy between Defendant and his father, but rather that such testimony is relevant to the issue of Defendant's intent to defraud SWFA. Even if Mr. Lee's testimony regarding Joe Valdez's scheme to obtain money from SWFLC and SWFA were properly raised at trial, the evidence before the Court regarding the transaction at issue indicates that Defendant never made any representation to SWFA. He did not prepare or sign the loan information sheet, nor did he make any oral representations to Mr. Elizondo. Mr. Elizondo verified the information on the loan information sheet with Defendant's father, not Defendant. Defendant waited outside Mr. Elizondo's office, and when the note was presented to him, Defendant signed the note and received two checks. Having failed to show that a false representation was made, or that Plaintiff relied on such false information in granting the loan, the Plaintiff has failed to satisfy two of the required elements under either 11 U.S.C. § 523(a)(2)(A) or (B) without even reaching the element of intent. The Court, therefore concludes that the Plaintiff has not sustained its burden of proof and the debt at issue in this adversary proceeding is dischargeable.

Pursuant to 11 U.S.C. § 523(d), a debtor who prevails in a complaint to determine dischargeability of a consumer debt under 11 U.S.C. § 523(a)(2) can recover costs and reasonable attorneys' fees incurred in defending the proceeding "if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust." 11 U.S.C. § 523(d). Upon a showing by the Defendant that the action was filed under 11 U.S.C. § 523(a)(2), that "the

12

debt sought to be discharged is a 'consumer debt,' and that the debt was discharged, the burden shifts to the creditor to show that its position was 'substantially justified' or, if not, that 'special circumstances would make an award 'unjust.'" *In re Pappan,* 334 B.R. 678, 682 (10th Cir. BAP 2005) (quoting *Household Bank, N.A. v. Sales (In re Sales),* 228 B.R. 748, 752 (10th Cir. BAP 1999)). There is no dispute that the debt at issue constitutes a consumer debt. *See* 11 U.S.C. § 101(8) ("'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose."). Substantial justification under 11 U.S.C. § 523(d) is consistent with the "substantially justified" standard contained in 28 U.S.C. § 2412(d)(1)(A) of the Equal Access to Justice Act (EAJA). *See Citizens Nat'l Bank v. Burns (In re Burns),* 894 F.2d 361, 362 n.2 (10th Cir. 1990). To meet such standard, the creditor must show "'a reasonable basis for the facts asserted; a reasonable basis in the law for the legal theory proposed; and support for the legal theory by the facts alleged.'" *Pappan,* 334 B.R. at 683.[5]

An award of fees under 11 U.S.C. § 523(d) is appropriate "'whenever the court finds that the plaintiff proceeded with its case past a point where Plaintiff knew or nave known that it could not carry its burden of proof.'" *American Savings Bank v. Harvey (In re Harvey),* 172 B.R. 314, 319 (9th Cir. BAP 1994) (quoting *In re Shurbier,* 134 B.R. 922, 928 (Bankr.W.D.Mo. 1991) (internal citation omitted). The Court finds that SWFA's position in seeking a determination of non-dischargeability under 11 U.S.C. § 523(a)(2) was not substantially justified. At trial SWFA failed to establish three of the four required elements for a

---

[5](discussing the Tenth Circuit's "reasonable in law and fact" test for determining substantial justification under the EAJA as enunciated in *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)) quoting *Harris v. Railroad Retirement Bd.,* 990 F.2d 519, 520-21(10th Cir. 1993)(citing *Gatson v. Bowen,* 854 F.2d 379, 380 (10th Cir. 1988)).

13

determination of non-dischargeability under 11 U.S.C. § 523(a)(2)(A), and failed to establish the threshold requirement under 11 U.S.C. § 523(a)(2)(B) that the loan information sheet constituted a statement in writing regarding the Defendant's financial condition.[6] Nor does it appear from the record in this proceeding that SWFA conducted any discovery to develop its case before trial. *Cf. ITT Consumer Fin. Corp. v. Mull (In re Mull),* 122 B.R. 763, 767 (Bankr.W.D.Okla. 1991) (awarding fees under § 523(d) where creditor failed to attend § 341 meeting and failed to conduct discovery). Under these circumstances, the court finds that SWFA was not substantially justified in pursuing a non-dischargeability action against Defendant. Nor has SWFA shown that special circumstances[7] exist that would make an award unjust.

Because the Court finds that SWFA was not substantially justified and no special circumstances are present which would make an award of attorneys' fees unjust, 11 U.S.C. § 523(d) requires the Court to award attorneys fees and costs to the Defendant. *See* 11 U.S.C. § 523(d) ("the court *shall* grant judgment in favor of the debtor . . .") (emphasis added); *Sales,* 228 B.R. at 752 (finding that the bankruptcy court is required to award fees under § 523(d) upon

---

[6]*See Bank of New York v. Le (In re Le),* 222 B.R. 366, 369 (Bankr.W.D.Okla. 1998) ("The determination of substantial justification is largely one of fact which requires proof of elements such as what the party did prior to making the complaint to investigate and substantiate the allegations, and what proof it has to establish the elements essential for it to prevail . . ."). *See also, Citizens Nat'l Bank v. Burns (In re Burns),* 77 B.R. 822, 823-24 (D.Colo. 1987), *aff'd* 894 F.2d 361 (10th Cir. 1990) (acknowledging that many courts find it necessary to find that no significant element of the creditor's claim has been established before awarding fees under § 523(d))(citations omitted).

[7]An example of "special circumstances" can be found in *In re Shaw,* 114 B.R. 291, 297 (Bankr.D.Utah 1990), where the bankruptcy court found that debtor's representations in statements and schedules regarding her income that reflected an amount less than what had been represented to lender at the time of the loan constituted "special circumstances" which would relieve creditor's liability under 11 U.S.C. § 523(d) despite a lack of substantial justification for pursuing the action.

14

finding that the creditor's position was not substantially justified and that no special circumstances would make an award unjust) (citation omitted). The trial of this adversary proceeding took place over approximately one-half day. The Court, therefore, finds that "a reasonable attorney's fee" for counsel's work in defending this adversary proceeding is $500.00, plus applicable New Mexico gross receipts taxes.

      A judgment consistent with these findings of fact and conclusions of law will be entered.

                                                                                                          _____
                                          MARK B. McFEELEY
                                          United States Bankruptcy Judge

COPY TO:

| Kelly P. Albers | R. Trey Arvizu |
| --- | --- |
| Attorney for Plaintiff | Attorney for Defendant |
| 650 Montana Avenue, Suite D | PO Box 1479 |
| Las Cruces, NM 88001 | Las Cruces, NM 88004 |